[Civ. No. 916.   Third Appellate District.—April 2, 1912.]

## A. E. CULVER, Respondent, v. J. W. NEWHART, Appellant.

MUTUAL, OPEN AND CURRENT ACCOUNT—ASSIGNABILITY—HUSBAND AND WIFE—CONDUCT OF BUSINESS—POWER OF ATTORNEY—INSUFFICIENT DEFENSE.—A mutual, open and current account, like an ordinary account, is property consisting of a chose in action, which is the subject of transfer, sale or assignment, or reassignment. A husband who, in the course of his business, has acquired such an account, may assign and transfer his business, including such account, to his wife, under a recorded instrument, and may, under her power of attorney, continue the business for her in the same manner as before such assignment, and she may thereafter reassign said account to her husband, who may sue thereon as her assignee; and it is no defense that the last items on the debit side of the account were not contracted with the wife personally, and that all transactions were between the husband and the debtor sued.

ID.—ABSENCE OF VARIANCE — PROOF CORRESPONDING TO ALLEGATIONS.— Where the complaint against the debtor sets forth all of the facts, including the assignment made by the husband to the wife, and the reassignment from the wife to the husband, and alleges that at the time of the reassignment the defendant was indebted to the wife in

a certain sum on a certain "open, current and mutual account," and
that on the date of the reassignment she sold and assigned said ac-
count to the plaintiff, and the evidence shows that on that date there
was due her on said account the specified balance, if it appears from
the evidence that the account was of the character alleged, there is
no variance.

Id.—SUPPOSITION OF STATED ACCOUNT—ISSUE AS TO "MUTUAL, OPEN AND
CURRENT ACCOUNT"—IMMATERIAL VARIANCE—STATUTE OF LIMITA-
TIONS WAIVED.—Assuming that the evidence shows the account to be
a stated account, and not "mutual, open and current," within the
meaning of section 344 of the Code of Civil Procedure, still the vari-
ance arising by reason thereof would be immaterial under section 469
of the Civil Code, because the defendant could not be actually mis-
led thereby to his prejudice, since he does not deny the existence of
the account, but merely joined issue as to whether the account was
"mutual, open and current," and it is immaterial whether the account
was stated or mutual, as the statute of limitations was not pleaded,
and that defense is waived.

Id.—ACCOUNT "MUTUAL, OPEN AND CURRENT"—MATTERS OF SETOFF.—
The account in question is in its nature a "mutual, open and current
account" within the contemplation of section 344 of the Code of
Civil Procedure, since the credit side of the account besides one cash
payment and several orders on others, had five items for lumber
sold and delivered to the plaintiff as the original owner of the ac-
count by the defendant, thus consisting of matters of setoff *pro
tanto,* which constituted the account "open, as contradistinguished
from an account stated." Mutual accounts are made up of matters
of setoff.

Id.—EVIDENCE OF RENTAL VALUE OF PLANER—KNOWN TERMS OF PRIOR
LEASE—SUPPORT OF FINDING.—A charge to the defendant of $20
per month for the rental value of a planer, which had been before
leased by plaintiff to a third party at that rental, to the knowledge
of the defendant, and to which rental the defendant in practical
effect succeeded, is properly considered as evidence of the reasonable
rental value of the planer, and in the absence of any evidence to the
contrary, it is sufficient to support a finding of such rental value of
the use of the planer against the defendant.

Id.—PROPER EVIDENCE OF THIRD PARTY AS TO PRIOR RENTAL AND DE-
LIVERY OF PLANER.—The court properly allowed the evidence of such
third party to show the monthly rate of rental previously paid by
him for the use of the planer for a year and a half, and that he
transferred the possession thereof to the defendant.

Id.—LOST POWER OF ATTORNEY—SECONDARY EVIDENCE—GENERAL POWER
—SUPPORT OF FINDING — ABSENCE OF PREJUDICIAL ERROR.—Where
the power of attorney executed by the wife to the husband was
shown to have been lost, and not to have been found after diligent

search, secondary evidence was admissible to show that it was a general power of attorney, authorizing him to transact all kinds of business in her name, and to collect the accounts and dispose of the property that had been assigned to her, and was sufficient to support a finding to that effect; and it is held that no error prejudicial to the defendant was committed in rulings upon questions and answers relative to such evidence.

Id.—Evidence—Bill of Sale from Husband to Wife—Business "Accounts and Indebtedness" — Parol Explanation — Account in Question.—The bill of sale made by the plaintiff, as husband, to his wife, purporting to convey to her all of his business, personal property, and "accounts and indebtedness" due to him, was properly admitted in evidence; and the plaintiff properly testified and was entitled to show, if the bill of sale is ambiguous in that respect, that the account here in question was included in the "accounts" sold and delivered to her.

APPEAL from a judgment of the Superior Court of Siskiyou County, and from an order denying a new trial. James F. Lodge, Judge.

The facts are stated in the opinion of the court.

Taylor & Tebbe, and C. J. Luttrell, for Appellant.

L. F. Coburn, for Respondent.

HART, J.—The complaint alleges that on the first day of September, 1910, the defendant was indebted to Mrs. A. E. Culver, wife of the plaintiff, in the sum of $687.90, "the same being a balance of an open, current and mutual account," etc., which said account is annexed to and made a part of the complaint; that on said first day of September, 1910, Mrs. Culver "sold, assigned and set over the said decount to this plaintiff."

The answer denies that the defendant was at any time indebted to Mrs. Culver in any sum or amount, and also denies the alleged assignment of the account referred to in the complaint or of any account by Mrs. Culver to the plaintiff.

The court's findings of fact were in favor of the plaintiff, and the court rendered and caused to be entered a judgment in accordance with said findings for the sum of $492.13.

The defendant has appealed to this court from said judgment and from the order denying his application for a new trial.

The defendant challenges all the findings, and furthermore charges that a number of rulings as to the evidence were erroneous and damaging to his rights.

The first and perhaps the most important point urged is that the evidence does not support the finding that the transactions from which this action arises "constitute an open, current and mutual account between the defendant and the said Mrs. A. E. Culver from August 10, 1909, to September 2, 1910, of which the said $432.13 was and is the balance." In other words, the claim is that there is "not only no evidence that Mrs. A. E. Culver ever had any account whatever against defendant, but also no evidence whatever of any account that defendant, Newhart, had against Mrs. Culver at any time"; that the account put in evidence, whatever its character, was one between the plaintiff and the defendant. Hence, it is argued, Mrs. Culver could not assign an account which she never owned. We understand it to be also claimed that the alleged account is not a "mutual, open and current account," within the meaning of section 344 of the Code of Civil Procedure, and that, therefore, by reason thereof a variance also arises between the pleaded account and the one proved.

The points as thus stated result from the defendant's construction of the several transactions from which the account pleaded in the complaint arose.

1. It appears that the plaintiff had been engaged in business in the town of Dunsmuir, Siskiyou county, under the name of "Nelson Lumber Company," and that on the tenth day of August, 1908, he transferred to his wife, Mrs. A. E. Culver, said business, together with all "the accounts and indebtedness" then due him, and among the accounts so transferred was the one which the evidence discloses constitutes the subject of this action. This transfer was evidenced by a written instrument or bill of sale, executed by the plaintiff, and, with the property and accounts so sold, delivered to Mrs. Culver, and recorded in the office of the county recorder of Siskiyou county, on the eleventh day of August, 1908.

The plaintiff testified and the court found that on the tenth day of August, 1908, Mrs. Culver, by a written power of attorney, clothed him with full authority to manage said business for her, and that, in pursuance of the authority so conferred, he continued, after the sale of the business to her, to give his personal attention to said business and to manage it for his wife in the same manner as he had prior to the transfer of the same.

At the time of the transfer of the business and book accounts to Mrs. Culver there was due the plaintiff from the defendant, on the account referred to in the complaint, the sum of $1,650, made up of the following items: April 1, 1908, one donkey-engine, $1,200; May 1, 1908, 500 feet 7/8-inch cable, $100; May 20, 1908, 1,000 feet of 7/8 cable, $200; May 20, 1908, 4,000 feet of 1/2-inch steel cable, $150. A short time prior to the first day of January, 1909, the above account was rendered to the defendant, and, on the said first day of January, there was added thereto the interest which had accrued thereon, amounting to the sum of $87.50, and bringing the total indebtedness of the defendant to the plaintiff up to the sum of $1,737.50. On said account, the defendant made one cash payment of $100, and at various times delivered to the plaintiff lumber and orders on certain individuals, the value of said lumber and orders being credited by plaintiff on said account, the amounts so credited aggregating the sum of $1,314.27.

The last item noted on the debit side of said account is dated May 20, 1908. There were two items on that date, the others being dated April 1, 1908, and May 1, 1908, respectively.

The last item on the credit side of said account is dated November 2, 1909, said credit, as well as several more, having been given and noted on said account by the plaintiff as agent of Mrs. Culver.

This action was commenced on the second day of September, 1910, or within two years from the date of the last item noted on the credit side of the account and more than two years after the date of the last item on the debit side. But no issue as to the statute of limitations is presented here, no plea of that character having been made by the defendant. The sole contention as to the point now under consideration

seems to involve the claim that there is a fatal variance between the account pleaded and the one proved. This contention is, as before suggested, based upon the proposition that the defendant never had any dealings of any kind or character with Mrs. Culver—that is to say, that the account was one entirely between the plaintiff himself and the defendant, and that Mrs. Culver was a stranger to and in no sense connected with the transactions culminating in the account; that, to quote counsel's language, "to have constituted an open, current, running account between Mrs. Culver and defendant, there must have been some sale from Mrs. Culver to defendant; that there is no proof of any such occurrence."

We see no merit in the proposition as thus laid down. To sustain it would be to hold that a mutual, open and current account cannot be made the subject of transfer or sale or assignment, for, obviously, if the contention of appellant be sound, an action on such an account could not be supported by an assignee or purchaser of the same, since it is very plain that, in the very nature of things, he could not show as to the account as assigned that he had personally made "some sale" to the debtor or that the items on the debit side of the account involved transactions between himself, personally, and the debtor. This is not the law, however. No one will dispute the proposition that a mutual, open and current account, like an ordinary account, is property—that is, a chose in action—and that, therefore, the plaintiff, as the original owner of the account in question, had the undoubted right to sell and transfer the same to his wife or to any other person (Civ. Code, secs. 1458, 953 and 954), subject, of course, to any equities which might have existed as to said account in favor of the debtor, and that she, having legally, so far as it appears here, acquired ownership of said account, could likewise sell and transfer it to whomsoever she pleased, or, as in this case, resell or assign it to her husband.

The complaint contains no averment that Mrs. Culver personally had anything to do with any of the several transactions from which said account arose. It merely alleges that, on the first day of September, 1910, the defendant was indebted to Mrs. A. E. Culver on a certain "open, current and mutual account," and that on that day she sold and assigned

said account to the plaintiff. The evidence discloses, as we have shown, that Mrs. Culver was the owner of the account on the day named, and that there was due her on said account a balance of several hundred dollars, and, assuming that the account was mutual, open and current between the defendant and the party from whom she purchased it, there is absolutely no variance between the account pleaded and the one proved. But, even conceding that the account is shown by the evidence to be a stated account and not "mutual, open and current," within the meaning of section 344 of the Code of Civil Procedure, still the variance arising by reason thereof would be immaterial. (Code Civ. Proc., sec. 469.) That section provides that "no variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." It cannot be said that the defendant was misled to his prejudice in maintaining his defense upon the merits. His answer does not deny the existence of the account, which is made a part of the complaint, but merely tenders an issue upon the question whether said account was "mutual, open and current" between himself and plaintiff's assignor. Had he so elected, he could have denied the existence of any open and current account against him, since the account relied upon by plain*'ff* was set out *in haec verba* as a part of the complaint, and fully and clearly notified him of each of the transactions or items constituting the basis or gist of plaintiff's action. And it is to be noted that the answer does not deny that the account pleaded is a "mutual, open and current" account between the defendant and *Mrs. Culver*. This leads to the suggestion that, since the importance of alleging and, if necessary, proving that the account was "mutual, open and current" lay in the proposition that thus plaintiff's action thereon would avoid the operation of the statute of limitations, and, since the defendant did not plead the statute and, therefore, waived his right to rely upon that defense, the question whether the account is a "mutual, open and current" or merely a stated account is immaterial, and, consequently, the questions left for determination under the issues are narrowed down to the following: 1. Was Mrs. Culver the owner of the account when the purported assignment thereof

to her husband (the plaintiff) was effected? 2. Did she assign the same to plaintiff? 3. Was there a balance due from defendant on said account?

But, if we deemed it important and necessary in the decision of this case to determine the question as to the nature of the account involved here, we would not hesitate to hold it to be a "mutual, open and current account" within the contemplation of section 344 of the Code of Civil Procedure, *supra.*

We have seen that the credit side of the account consists of credits for one cash payment, several orders on others and for lumber sold and delivered to the plaintiff, as the original owner of the account, by the defendant. The last five items on the credit side were for lumber sold and delivered at various times by the defendant to the owner of the account, and the value of this lumber was credited on the account as a setoff *pro tanto.* This constituted the account "open, as contradistinguished from an account stated." (*Norton* v. *Larco,* 30 Cal. 131, [89 Am. Dec. 70].) In that case, which has been approved in many subsequent cases in this state, a "mutual, open and current account" is thus defined: "Mutual accounts are made up of matters of setoff. There must be a mutual credit founded on a subsisting debt on the other side, or an express or an implied agreement for a setoff of mutual debts. A natural equity arises when there are mutual credits between the parties, or where there is an existing debt on one side which constitutes a credit on the other; or where there is an express or implied understanding that mutual debts shall be a satisfaction or setoff *pro tanto* between the parties. (Angell on Limitations, c. 14, sec. 7.)"

In *Penniman* v. *Rotch,* 3 Met. (Mass.) 216, the plaintiff proceeded in assumpsit for provisions sold and delivered. The defendant did not plead any setoff, but interposed the plea of the six years statute of limitations as a bar to the action. In resistance to the defendant's plea, the plaintiff stood on two items, both bearing date in excess of six years before the action was instituted. One of these items was a credit for cash, naming the sum, and the other was for a calf, with its value specified. One of the issues presented was whether the evidence disclosed a mutual and open account between the parties within the purview of the statute, which was substantially in the language of our section 344, Code of

Civil Procedure. The court, speaking by Chief Justice Shaw, "held that the calf was an article of merchandise delivered by the defendant to the plaintiff in the ordinary course of business, either at the agreed price, or upon an implied promise of the plaintiff to allow its value in amount, and that the evidence established that there was an open and mutual account between the parties, and that no part of the plaintiff's demand was barred by the statute of limitations." (*Norton* v. *Larco,* 30 Cal. 131, [89 Am. Dec. 70].)

There is absolutely no ground upon which any distinction as to the facts between the foregoing cases and the one at bar can be suggested. Whether there was or was not an express agreement between the parties here that the value of the lumber, obviously an article of merchandise, was to be credited on the account as a setoff in a ratio equal to such value, the irresistible inference from the circumstances of the transactions between the parties is, nevertheless, that there was an implied understanding that such was the arrangement between them. Indeed, no other conclusion could with any reason follow the circumstances by which the transactions leading to the existence of the account were carried on.

2. Among the items charged in the account against the defendant was one for the rent of a "planer" for one year at the monthly rental of $20, the total sum of said item being $240. Appellant insists that the evidence does not justify the finding in favor of the plaintiff as to said item.

It appears that a planing-mill, located at Dunsmuir, had been leased by the plaintiff to one George Miller. The latter was indebted to both the plaintiff's assignor, as successor to the business of plaintiff, and the defendant, and, on the fourteenth day of January, 1909, he proposed to both the plaintiff (acting for Mrs. Culver) and the defendant that if the latter would assume his indebtedness to Culver, and cancel his (Newhart's) claim against him (Miller), the latter would turn the planing-mill and the business over to the defendant. This proposition was acceded to by all the parties. Miller's lease of the planer called for the payment of rent at the rate of $20 per month. There was no definite understanding between the plaintiff, as agent of Mrs. Culver, and the defendant as to the amount which the latter would pay as rent for the planer, but the plaintiff, assuming that the transaction

between himself, Miller and the defendant amounted only to a transfer of the lease, with all its rights and burdens, from Miller to the defendant, charged the latter on the account as rent for the planer the sum specified in the lease to Miller, viz., $20 per month. As a matter of fact, so testified the plaintiff, at the time of the relinquishment of the lease by Miller, the real understanding was that the defendant would buy the planer, but, not having done so, he (the plaintiff) treated the transaction as involving merely a lease of the planer. In some particulars the testimony of the plaintiff with respect to this transaction was corroborated by Miller. The point made by counsel against the finding as to the planer is twofold: 1. That there is no evidence which shows that the defendant rented the planer from *Mrs. Culver* for one year at the monthly rental of $20; 2. That the evidence does not show that the defendant entered into a contract for the leasing of the planer at $20 per month with anybody or at all.

As to the first of the foregoing propositions, the reply is that, while it is true that Mrs. Culver did not *in person* conduct the negotiations by which the possession of the planer was transferred to Newhart, in legal contemplation she did do so, for the plaintiff, in the execution of that transaction, was acting for her as her agent, under the authority of the power of attorney referred to. This also constitutes a reply to a portion of the second proposition, but by the latter we understand it to be also the contention that there is no evidence disclosing that the sum of $20 per month was the sum agreed upon as compensation for the possession and use of the planer. It is true, as before stated, that there is no evidence disclosing that any particular or definite amount as rental was expressly agreed upon by the parties; but it was indisputably shown that Newhart took possession of the planer on the fifteenth day of January, 1909, and that he maintained such possession for at least one year. It was further shown by uncontradicted testimony that Miller had paid for the use and occupation of the planer the monthly rental of $20. From this testimony the court was justified in finding, in the absence of evidence revealing an express agreement as to rental, the reasonable value of the possession and use of said planer, and we know of no safer standard for the fixing of such value than the rental specified in the lease to which the defendant in practical

effect succeeded when he took possession of the planer. The defendant offered no testimony to show that the sum of $20 per month as rental for the use of the planer was excessive or beyond its actual value for his purposes. Indeed, the defendant offered no testimony whatsoever with regard to the transaction· involving the transfer of the possession of the planer to him. We think, as stated, that the finding as to the planer transaction is sufficiently supported.

3. It is further claimed that the evidence is insufficient to uphold the finding that, on the tenth day of August, 1908, Mrs. A. E. Culver "made, executed and delivered unto this plaintiff full power of attorney to transact any and all business for her," and that during all the time from the date of the execution of said power he acted as her agent and attorney in fact in all matters appertaining to the business acquired by her from him, including some of the transactions involved in this action.

The plaintiff testified that Mrs. Culver did, by writing, on the date mentioned, make him her attorney in fact, with full power to act as her attorney or agent to collect "the accounts and dispose of the property" that had been assigned to her; that he had mislaid or lost the instrument, and that he had made a thorough but futile search before the trial of all the places where he customarily kept important documents to find the writing. He testified that, while the power did not specify the transactions upon which this action is founded, it, nevertheless, gave him authority to "transact all kinds of business in her name." This testimony was, in our judgment, sufficient to justify the finding as to the power of attorney. The defendant did not attempt to contradict this testimony in any manner. Indeed, we may add that the defendant offered no testimony whatsoever upon any of the issues presented. He did not, by evidence, controvert the account or attempt to overcome the force of plaintiff's testimony relative to any of the transactions giving rise to the pleaded account.

4. The ruling of the court allowing the plaintiff to state the contents of the power of attorney mentioned is assigned as prejudicial error. The specific objections to the inquiry concerning said instrument were that the questions to the witness were leading and suggestive, and that his answers thereto involved his conclusions. The exceptions to the testi-

mony upon this point appear to possess no merit.  The witness was permitted, without objection, to say that his wife had executed and delivered to him a power of attorney, that he had lost it, and that he searched for and could not find it. When the witness was requested to state the contents of the instrument, one of the attorneys for the defendant interrupted by inquiring whether the power had been recorded, to which question a negative answer was given.  Thereafter, on redirect, over objection by the defendant, the plaintiff was allowed to say, as before noted, that he was by said instrument clothed with full authority to transact "all kinds of business in her name."  As to the first question addressed to the witness with regard to the execution of the power of attorney, it may be conceded that it was leading and suggestive in form, but, there having been no objection to the question on that or any other ground, the defendant cannot, of course, claim any advantage here from the question so propounded and the answer thereto.  As to the objection that the answers to the questions calling for the contents of the instrument involved mere conclusions of the witness, it is to be said that we cannot see how the instrument itself could have furnished superior evidence in that respect.  It is commonly known that instruments conferring general authority on a person to act as the agent of another usually set forth the terms and scope of such authority in general language or in language which may, in a sense, be regarded as involving the statement of a conclusion as to the proposition to which it relates.  The witness declared that the power vested him with authority "to transact all kinds of business in her name," and, as stated, it is highly probable that, since he was thus clothed with general authority in that regard, the instrument itself would have disclosed such authority to have been prescribed in language no less general than that in which the witness declared his authority to have been thus defined.

5. It is argued that the bill of sale from plaintiff to Mrs. Culver was erroneously admitted in evidence.  We can perceive no possible objection to said instrument as evidence of the sale of the business of plaintiff and the account in controversy to Mrs. Culver.  The bill of sale, as stated, is the written evidence of the sale by the plaintiff to Mrs. Culver of all his personal property, etc., and "accounts and indebt-

18 Cal. App.—40

edness due said party of the first part.'' The plaintiff testi-
fied, and was thus entitled to show, if the bill of sale was
ambiguous in that respect, that the account concerned here
was included in the ''accounts'' he sold and delivered to Mrs.
Culver.

6. The objection that the court erred in allowing the wit-
ness, Miller, to testify as to the transaction involving the trans-
fer of the possession of the planer from him to the defendant
and as to the rental paid by the witness for the use of the
planer for a year and a half, is untenable. Manifestly, the
plaintiff had the right to show that the defendant took pos-
session of the planer, and, as evidence of the rental value
thereof, to prove what the witness had paid Mrs. Culver for
the use of the same for the period during which he had pos-
session of it.

We have now reviewed all the points submitted on this
appeal by the appellant. As must be apparent from the fore-
going views, our opinion is that the appeal is altogether with-
out merit.

The judgment and order are, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.